**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rene RIVERO, Defendant–Appellant.**

**No. 91–1326.**

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1993.

Decided May 19, 1993.

Jacqueline Oreglia (argued), Office of the U.S. Atty., Crim. Div., Barry R. Elden, Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Jerry B. Kurz (argued), Kathryn Hall, Hall & Kurz, Chicago, IL, for defendant-appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

CUMMINGS, Circuit Judge.

A jury found Rene Rivero guilty of one count of conspiracy to import cocaine, in violation of 21 U.S.C. § 963, and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Rivero appeals his sentence. He argues that the sentencing court applied the wrong version of Sentencing Guideline § 3E1.1, there-

by erroneously depriving Rivero of a deserved, two-level reduction in his offense level. He also claims that the sentencing court erred by enhancing his sentence under § 3B1.1(c).

### I.

Rene Rivero owned Fiesta Travel, a Chicago travel agency. In November 1988, Rivero contacted John Douvris, whom he knew through prior cocaine dealings, about accompanying tourist groups as a representative of Fiesta Travel. Douvris went to Margarita Island, Venezuela, twice as a Fiesta Travel representative. On both trips Douvris drove Rivero's car to Toronto, Canada, where he met with tourist groups and accompanied them to Margarita Island. Rivero paid Douvris for his services. On the first trip, Rivero arranged for Olga Rodriguez to accompany Douvris. Near the end of that trip, Rodriguez acquired two empty suitcases that she brought back to Chicago.

Rodriguez did not accompany Douvris on his second trip. Before Douvris left for Toronto, Rivero told Douvris that his parents had been travelling in the area and had left suitcases there. He asked Douvris to bring the suitcases back to Chicago. Once on Margarita Island, Douvris engaged in a series of phone calls involving someone named Walter, who was in Colombia. At some point, an unidentified man and woman provided Douvris with two empty suitcases.

As Douvris drove back to Chicago from Toronto, he was stopped at the border, where inspectors found 4936.4 grams of cocaine (89 percent pure), valued at approximately $1 million, hidden in false bottoms of the suitcases. Agents from the Drug Enforcement Agency (DEA) accompanied Douvris back to Chicago. On the way, Douvris made two calls to Rivero recorded by the agents.

Douvris and Rivero arranged to meet in an alley near Rivero's apartment. When Douvris handed Rivero the two suitcases, the agents appeared and arrested both men. Rivero consented to a search of his apartment. In a fireproof safe, agents found money wrappers, Rivero's passport (which revealed a recent trip to Colombia), Colombian money, a map of Toronto, a room receipt from the Carlingview Motel (where Douvris stayed in Toronto), and a triple-beam scale. The safe also contained one-eighth of a gram of cocaine folded inside a five-dollar bill. Later, Rivero denied the existence of cocaine in his apartment.

Rivero and Douvris were each indicted for one count of conspiracy to import and distribute cocaine and one count of knowing possession of cocaine with intent to distribute. Douvris pleaded guilty to the conspiracy count and testified for the government at Rivero's trial.

Rivero testified twice in his own defense. He told the jury that he believed he was smuggling religious icons into the United States. He denied any knowledge of cocaine in the suitcases. The jury found him guilty on all counts.

Rivero did not discuss the offense with the probation officer who wrote the presentence investigation report (PSI). The probation officer recommended a two-level enhancement for obstruction of justice, a four-level enhancement for being an organizer of fewer than five people, and no reduction for acceptance of responsibility.

Sometime after receiving the PSI, Rivero realized that he had pursued an imprudent strategy. He admitted that he had perjured himself at trial, and he offered to cooperate with the government. In his objections to the PSI, Rivero stated that he should receive a two-level enhancement under § 3B1.1(c) rather than a four-level enhancement under § 3B1.1(a). Rivero also requested a two-level reduction based upon his acceptance of responsibility after he received the PSI. The sentencing court agreed that Rivero should receive a two-level enhancement under § 3B1.1(c) but refused to grant a reduction for acceptance of responsibility.

### II.

#### A. Acceptance of Responsibility

Under the Sentencing Guidelines, a defendant is entitled to a two-point reduction if he "clearly demonstrates a recognition and affirmative acceptance of personal responsi-

bility for his criminal conduct." U.S.S.G. § 3E1.1. The defendant bears the burden of demonstrating that he is entitled to the reduction. *United States v. Skinner*, 986 F.2d 1091, 1100 (7th Cir.1993) (citations omitted). The district court's finding of whether a defendant has accepted responsibility is factual and will be overturned only if clearly erroneous. *United States v. Yanez*, 985 F.2d 371, 374 (7th Cir.1993) (citations omitted).

■ Rivero argues that the sentencing court erred in refusing to grant him a reduction because it applied the wrong version of the Guidelines. At the sentencing hearing, the court quoted from Application Note 4 to § 3E1.1 of the Guidelines, dated November 1987. Application Note 4 had been amended in November 1989, and the amended application note was in effect at the time of Rivero's sentencing. The government does not dispute that the 1989 version of the Guidelines should have been applied. The government does contend, however, that Rivero waived his argument that the court relied on the wrong version of the application note by failing to raise it at sentencing.

Although Rivero did object to the denial of a reduction under § 3E1.1, he never objected to the sentencing court's use of the 1987 Guidelines. A defendant who fails to raise a sentencing challenge before the sentencing court waives the issue on appeal. *United States v. Blythe*, 944 F.2d 356, 359 (7th Cir. 1991); *United States v. Heilprin*, 910 F.2d 471, 474 (7th Cir.1990). We may review a waived issue only for plain error. Fed. R.Crim.P. 52(b); *United States v. Jackson*, 974 F.2d 57, 60 (7th Cir.1992) (citing *United States v. Livingston*, 936 F.2d 333, 336 (7th Cir.1991), certiorari denied, — U.S. —, 112 S.Ct. 884, 116 L.Ed.2d 787); *Blythe*, 944 F.2d at 359.

■ Under the plain error doctrine, appellate courts must correct "particularly egregious errors." *Blythe*, 944 F.2d at 359 (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)). We will reverse for plain error "only when ... convinced that it is necessary to avert an actual miscarriage of justice." *Jackson*, 974 F.2d at 60 (quoting *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th

Cir.1984), certiorari denied, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785).

■ The sentencing court's error in reading from the wrong version of Application Note 4 was not so egregious as to result in a miscarriage of justice. The 1989 amendment did not alter the general intent of Application Note 4. The 1987 version recited a *per se* rule against granting acceptance of responsibility "where a defendant perjured himself, suborns perjury or otherwise obstructs the trial or administration of justice, regardless of other factors." The amended version allows an exception to the general rule by providing for adjustment under § 3E1.1 in "extraordinary cases." Rivero has not presented to the district court or to this Court anything extraordinary about his case. Furthermore, the sentencing court recited several additional reasons for refusing the reduction: extensive perjury at trial, Rivero's entreaties to Douvris, and Rivero's belated acceptance of responsibility. Therefore, our refusal to remand on this issue that the defendant never raised before the sentencing court will not result in a miscarriage of justice.

■ Rivero also argues that Application Note 2 of § 3E1.1 in the November 1990 Guidelines provides him with additional ammunition in his challenge to the sentencing court's refusal to grant him a reduction. Application Note 2 provides:

> This adjustment is not intended to apply to a defendant who puts the government to its proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations, a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial....

(Appellant's Brief at 24–25 (quoting U.S.S.G. § 3E1.1, Application Note 2)). Rivero argues that the amendment indicates that an "eleventh hour" acceptance of responsibility does not preclude acceptance of responsibili-

ty and that his case should be remanded for the district court to determine whether he qualifies as a "rare situation."

Not only has Rivero failed to suggest why his case would constitute a "rare situation," but his argument is also disingenuous. He quotes the application note selectively, omitting its explanation of what would constitute a "rare situation":

> In rare situations, a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, *where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt. (e.g.* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, *a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.*

U.S.S.G. § 3E1.1, Application Note 2 (emphasis added). The "rare situation" envisioned by the Sentencing Commission is one where the defendant has conceded before trial that he has engaged in the alleged conduct, but he wishes to challenge the content or application of the statute. This provision has no bearing on Rivero's case. He consistently denied his factual guilt until the last moment and has presented nothing to suggest that he qualifies for the "rare situation" exception.

### B. Enhancement under § 3B1.1(c)

Rivero argues on appeal that he should not have received a two-level enhancement under § 3B1.1(c) for his role in the offense. Section 3B1.1 provides for a two-level enhancement if the defendant is an organizer, leader, manager, or supervisor. U.S.S.G. § 3B1.1.

■ The probation officer had recommended a four-level enhancement under § 3B1.1(a), which requires more than five participants. In his written objections to the PSI, the defendant objected to the four-level enhancement because there was insufficient

evidence showing that all the people involved were knowing participants. Rivero then asserted that "defendant should be assessed an additional two points under 3B1.1(c) as an organizer, leader, manager, or supervisor in any criminal activity other than described in 3B1.1(a) which requires five or more participants." [1]

■ As the court was determining whether Rivero should receive a two-level or four-level enhancement, the following exchange took place at the sentencing hearing:

> THE COURT: ... You get two no matter what—
>
> MS. STOWELL [defense counsel]: That is correct, your Honor.
>
> THE COURT: —under the facts of this case.

(Sent. Tr. at 8). At all times, Rivero's objections were limited to whether the enhancement should be four levels under § 3B1.1(a) or two levels under § 3B1.1(c). His argument that he should have received no enhancement because he controlled no one is waived for failure to raise it before the district court and may be reviewed only for plain error. *Blythe,* 944 F.2d at 359.

■ No plain error occurred here. We recently have held that "control over others" is not an essential element in a determination of § 3B1.1. *Skinner,* 986 F.2d at 1099. It is enough if the defendant was a key figure who coordinated and organized the criminal activity. *Id.*

Rivero recruited Douvris to take the trips to Venezuela. He also arranged Douvris' trips to Venezuela and the travel details. He provided Douvris with instructions on how to go, where to stay and what to do. Douvris reported directly to Rivero. Rivero arranged for Olga Rodriguez to accompany Douvris. He paid Douvris for his services. Rivero also directed Douvris to pick up the suitcases containing cocaine on the second trip, and Rivero accepted those suitcases upon Douvris' return. Although he would like this Court to believe he was no more

---

1. Under § 3B1.1(a), the defendant need not actually control five or more people. Section 3B1.1(a) is appropriate if the defendant was a manager and the scheme involved five or more

people. *United States v. Goines,* 988 F.2d 750, 777–78 (7th Cir.1993) (citing *United States v. McGuire,* 957 F.2d 310, 316–317 (7th Cir.1992)).

than a conduit, Rivero played a more prominent role as a central figure who organized and managed the scheme.

AFFIRMED.