**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lester C. LYKES, Defendant–Appellant.**

No. 92–1775.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1993.

Decided July 21, 1993.

Rehearing and Suggestion for Rehearing In Banc Denied Aug. 24, 1993.

---

K. Tate Chambers, Bradley W. Murphy (argued), Asst. U.S. Attys., for plaintiff-appellee.

Roy P. Amatore, Chicago, IL (argued), for defendant-appellant.

Before CUMMINGS and KANNE, Circuit Judges, and EVANS, Chief District Judge.*

KANNE, Circuit Judge.

The defendant, Lester C. Lykes, was convicted of possessing a gun after having been convicted of a felony, in violation of 18 U.S.C. § 922(g), and the district judge sentenced him to ten years imprisonment. The United States Sentencing Guidelines dealing with the defendant's offense were amended between the date he committed the crime and the date he was sentenced. Without objection from the parties, the district judge apparently applied the Guidelines in effect at the time of the commission of the offense rather than those in effect at the time of sentencing, as required by 18 U.S.C. § 3553(a)(4). Finding this misapplication of the Guidelines was not plain error and the defendant's other challenges meritless, we affirm the sentence imposed by the district court.

## I.

In the early morning hours of January 29, 1990, Roger Hightower visited the home of Catha Irby, his ex-girlfriend and the mother of his two children. While Hightower was at Irby's home, Irby's current boyfriend, the

---

* The Honorable Terence T. Evans, Chief Judge of the Eastern District of Wisconsin, is sitting by designation.

defendant, arrived. An argument arose between Hightower and the defendant, resulting in the defendant's leaving the house to retrieve a shotgun. Upon his return, the defendant pointed the shotgun at Hightower, who got in his car and drove away. Shortly thereafter, Hightower returned to the area and stopped his car near Irby's house. With the defendant still brandishing the shotgun and Hightower seated in his car, a second shouting match broke out between the two men. A shot was fired.

Hightower sped away, and the defendant ran to the home of one of Irby's neighbors. The defendant gave the neighbors the shotgun and instructed them not to give it to anyone. While still in the neighbors' home, he called 911 and reported a shooting in the area. When he left the home, the police were waiting outside.

After questioning the defendant and the neighbors, the police arrested the defendant. The shotgun was recovered from behind a television set in the neighbors' home, along with three live rounds of ammunition. An examination of the double-barrelled shotgun revealed that it contained one expended shell and one live round. Upon his return to the scene, Hightower was also questioned and his car examined. The police found a gunshot hole in the roof of his car, although firearms experts later could not definitively state that a shotgun slug lodged in the car had been fired from the seized shotgun. The defendant was subsequently indicted and convicted in a bench trial of knowingly possessing a gun as a convicted felon, in violation of § 922(g).

## II.

The central issue in this appeal revolves around the fact, noted earlier, that the Guidelines were amended between the time the defendant committed the offense in 1990 and his sentencing in 1992. The Guidelines in effect at the time of the offense were those containing amendments effective November 1, 1989 (1989 Guidelines). Under the 1989 Guidelines, § 2K2.1(a)(2) provides that the defendant's § 922(g) offense receive a base offense level of 12. More importantly, the defendant is classified as a career offender under § 4B1.1 of the 1989 Guidelines, due to his prior criminal record and current conviction.

Career offender status under § 4B1.1 requires that the defendant i) be over 18 years of age, ii) have been previously convicted of two crimes of violence or controlled substance offenses, and iii) have currently committed an offense which is a crime of violence or controlled substance offense. While the defendant readily meets the first two requirements,[1] whether or not his current offense is a crime of violence is a more difficult issue.

Section 4B1.2(1) defines a "crime of violence" as:

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) ... involves conduct that presents a serious potential risk of physical injury to another.

We have previously interpreted this provision as including as crimes of violence those felon-in-possession offenses which involve the use or threatened use of force. *United States v. McNeal,* 900 F.2d 119, 123 (7th Cir.1990); *United States v. Alvarez,* 914 F.2d 915, 919 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991); *United States v. Chapple,* 942 F.2d 439, 441–42 (7th Cir.1991).

As the evidence indicates that the defendant discharged a shotgun in the direction of Hightower, his current § 922(g) offense constituted a crime of violence under the state of the law in 1989, making him a career offender under § 4B1.1. Section 4B1.1 mandates that the defendant receive a total offense level of 24 and a criminal history category of IV because his conviction could result in a ten-year maximum sentence under 18 U.S.C. § 924(a)(2). The combination of these two

---

1. In relation to the second requirement, the defendant was previously convicted of the state law felonies of armed violence and involuntary manslaughter.

factors results in a recommended sentence range of 100 to 125 months under the 1989 Guidelines.

On the other hand, the Guidelines in effect at the time of sentencing were those containing amendments effective November 1, 1991 ("1991 Guidelines"). Effective November 1, 1991, the United States Sentencing Commission amended the commentary to § 4B1.2, adding the following language:

> The term "crime of violence" does not include the offense of unlawful possession of a firearm by a felon. Where the instant offense is unlawful possession of a firearm by a felon, the specific offense characteristics of § 2K.2.1 (Unlawful Receipt, Possession or Transfer of Firearms or Ammunition: Prohibited Transactions Involving Firearms or Ammunition) provide an increase in offense level if the defendant has one or more prior felony convictions for a crime of violence or controlled substance offense; and if the defendant is sentenced under the provisions of 18 U.S.C. § 924(e), § 4B1.4 (Armed Career Criminal) will apply.

§ 4B1.2 comment. (n. 2). The Supreme Court has held that, despite our precedent to the contrary, this revised commentary controls the application of § 4B1.2. *Stinson v. United States*, — U.S. —, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Thus, under the 1991 Guidelines, the defendant's current § 922(g) offense may not be considered a crime of violence under § 4B1.2(1), preventing his classification as a career offender under § 4B1.1.

However, effective the same date as the revised commentary to § 4B1.2, the Commission amended § 2K2.1(a)(2), raising the base offense level from 12 to 24 for a § 922(g) violation by a defendant who has two prior convictions for crimes of violence. Independent of the career offender provision, the

defendant's criminal record places him in criminal history category VI. Thus, under the 1991 Guidelines, the defendant's total offense level of 24 and criminal history category of VI result in a recommended sentence range of 100 to 125 months imprisonment, the same sentence range recommended by the 1989 Guidelines.

In preparing the defendant's presentence report, the probation officer used the 1989 Guidelines.[2] She began with § 2K2.1, which provides a base offense level of 12 for the § 922(g) offense, but went on to determine that the defendant's criminal record and the discharge of the shotgun resulted in his classification as a career offender under § 4B1.1.[3] Arriving at a total offense level of 24 and a criminal history category of VI, she recommended a sentence range of 100 to 125 months.

At the sentencing hearing, the defendant objected to the presentence report's recommendation that he be sentenced as a career offender under § 4B1.1, arguing that the evidence did not support a finding that the current offense was a crime of violence. The district judge rejected the defendant's argument and held that he was a career offender under § 4B1.1. Accepting the probation officer's recommendations, the judge sentenced the defendant to 120 months imprisonment. In doing so, the district judge apparently applied the 1989 Guidelines because he expressly accepted the recommendations of the presentence report that was based on the 1989 Guidelines, and neither he nor the parties mentioned the 1991 Guidelines.

■ By applying the 1989 Guidelines, instead of the 1991 Guidelines, the district judge did not consider the mandate of 18 U.S.C. § 3553(a)(4) that the court apply the Guidelines in effect at the time of sentencing.

---

**2.** As both the 1989 Guidelines and the 1990 Guidelines lead to the same result in this case, it is possible the probation officer applied the 1990 Guidelines. Even if that did occur, the outcome of this appeal would not change. For the purposes of our analysis, we assume the 1989 Guidelines were used.

**3.** In addition to recommending the defendant be sentenced as a career offender, the probation

officer opined that the defendant's conduct underlying the § 922(g) offense constituted aggravated assault under § 2A2.2, and pursuant to the cross reference provision of § 2X1.1, she alternatively recommended the application of the offense level applicable to aggravated assault. We need not address the defendant's challenge related to that issue because that recommendation does not affect the outcome of this appeal.

Because neither party objected to the use of the 1989 Guidelines, we review the district court's decision to do so under the plain error doctrine. Fed.R.Crim.P. 52(b); *United States v. Rivero,* 993 F.2d 620 (7th Cir.1993). "We will reverse for plain error 'only when ... convinced that it is necessary to avert an actual miscarriage of justice.'" *Id.* (quoting *United States v. Jackson,* 974 F.2d 57, 60 (7th Cir.1992)). In some circumstances, a defendant could meet this standard by showing the district court's use of an inapplicable version of the Guidelines resulted in a more severe sentence than that called for under the correct version. *See, e.g., United States v. Hoster,* 988 F.2d 1374, 1380–81 (5th Cir. 1993) (plain error occurred when district court applied wrong offense level as a result of its use of a presentence report based on incorrect version of the Guidelines).

■ However, here, independent applications of the 1989 and 1991 Guidelines lead to the same recommended sentence range. The district judge correctly thought, although for the wrong reasons, that a sentence range of 100 to 125 months applied to the defendant and explained his decision to sentence him to 120 months imprisonment as follows:

> My reasons for imposing sentence in this case are as follows. It's incredible to me that this is the third time that you have fired a firearm at another human being. I find that absolutely incomprehensible, what kind of person you could be that would do that.
>
> We've got you shooting a woman in the back of the head back in 1982 who later died from complications resulting from that. We've got you shooting someone on the side of the road after you have an altercation with them and seriously wounding them and now we have this incident. I believe the evidence supports a finding that you did actually fire a shot at this person in this incident.
>
> Mr. Murphy is absolutely correct. If there's one person in the City of Peoria at that time who should not have had a weapon in their hands, it was you. And frankly from my point of view, I don't see—in view of this incident in connection with the other two, I don't have any reason to believe

that you wouldn't do this again or won't when you get out the next time.

> Consequently, in view of this fact that you have now on at least three occasions fired a firearm at another human being, one case leading to death, another case serious injury and this case could have been death or serious injury, I think the only sensible thing that I could do here would be to sentence you to the most time that I can. If I could sentence you to life at this point, I would. I can only sentence you to 120 months and so that's what I'm going to do.

These comments leave no doubt that, had he applied the 1991 Guidelines, the district judge would have sentenced the defendant to the statutory maximum of 120 months imprisonment. Thus, the district judge's use of the 1989 Guidelines does not constitute plain error, and remand is unnecessary.

The defendant attempts to avoid this conclusion by arguing that the *Ex Post Facto* Clause prevents the application of § 2K2.1 of the 1991 version. Although our circuit has sent less than consistent messages on the issue, eleven other circuits have held that if the sentence range mandated by the Guidelines in effect at the time of sentencing exceeds that applicable at the time of the offense, then the *Ex Post Facto* Clause of the Constitution requires application of the version in effect at the time of the offense. *United States v. Schnell,* 982 F.2d 216, 218 (7th Cir.1992) (citations omitted). The defendant argues that, in light of *ex post facto* concerns, the district court could not apply those provisions in the 1991 version of the Guidelines that call for a more severe penalty than the 1989 version. At the same time, given the directive of § 3553(a) that the court shall apply the Guidelines in effect at the time of sentencing, the defendant asserts that any amendments which are effective under the 1991 version and do not violate the *Ex Post Facto* Clause should be applied.

According to the defendant, the district court should have applied the 1989 version of § 2K2.1(a)(2) for the instant offense because it provided a base offense level of 12, as opposed to the base offense level of 24 in the 1991 version of the same provision. In addressing whether the defendant was a career

offender under § 4B1.1, the court should have applied § 4B1.2 as interpreted by the 1991 commentary stating that a felon-in-possession offense is not a crime of violence and held that the defendant was not a career offender. Under this approach, the defendant would receive a base offense level of 12 which, when combined with his criminal history category of VI, results in a recommended sentence range of 30 to 37 months imprisonment.

In addressing a potential violation of the *Ex Post Facto* Clause, other circuits reject the piecemeal approach urged by the defendant and uniformly apply the two different versions of the Guidelines at issue. *United States v. Warren*, 980 F.2d 1300, 1304–06 (9th Cir.1992); *United States v. Lenfesty*, 923 F.2d 1293, 1299 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991); *United States v. Stephenson*, 921 F.2d 438, 440–41 (2d Cir.1990). In *Stephenson*, the Second Circuit explained:

> The Sentencing Commission intended the Guidelines to be applied as a "cohesive and integrated whole." Applying various provisions taken from different versions of the Guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines. Such an application would also contravene the express objective of seeking uniformity in sentencing.

921 F.2d at 441 (citations omitted). Without resolving our conflicting precedent on whether the *Ex Post Facto* Clause may require application of the Guidelines in effect at the time of sentencing, we recently joined the other circuits in rejecting the piecemeal application of two versions of the Guidelines. *United States v. Boula*, 997 F.2d 263 (7th Cir.1993).

The most recent amendments to the Guidelines, effective November 1, 1992, support this approach to *ex post facto* issues by adding § 1B1.11, p.s., which provides:

> (a) The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.
>
> (b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would vio-

late the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

> (2) The Guideline Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual. However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.

■ Furthermore, the Commission's decision to double the base offense level applicable to a § 922(g) offense under § 2K2.1, while simultaneously deciding that offense is not a crime of violence, directly undercuts the defendant's argument for the piecemeal application of the 1989 and 1991 versions of the Guidelines. The revised commentary to § 4B1.2 acknowledges the corresponding amendment to § 2K2.1, stating "[w]here the instant offense is the unlawful possession of a firearm by a felon, the specific offense characteristics of § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms and Ammunition; Prohibited Transactions Involving Firearms or Ammunition) provide an increase in offense level if the defendant has one or more prior felony convictions for a crime of violence or controlled substance offence." Thus, as the Eighth Circuit stated, when two Guideline provisions in dispute referred to each other, "[t]he most reasonable interpretation of these provisions is that they move in concert," rather than in the piecemeal fashion urged by the defendant. *Lenfesty*, 923 F.2d at 1299.

One could argue that a piecemeal application is warranted in this case because the Commission characterized the effect of the revised commentary as merely "clarif[ying] that the offense of unlawful possession of a weapon is not a crime of violence," Amendment 433, U.S.S.G.App. C, at 253 (Nov.1992), and the Commission included this amendment in the list of amendments which may

serve as grounds for granting a motion under 18 U.S.C. § 3582(c)(2) to reduce a defendant's sentence. U.S.S.G. § 1B1.11, p.s. (1992). We disagree with this approach.

■ The *Ex Post Facto* Clause prohibits, among other things, "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed." *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798). "[C]entral to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)). The amendment to the commentary was not merely clarifying, but rather it substantively changed the law. "Every [ ] court of appeals that addressed the question before the amendment to the commentary in question had reached a similar conclusion: at least in some circumstances, a felon in possession charge could be considered a crime of violence." *United States v. Joshua*, 976 F.2d 844, 853 (3rd Cir.1992) (citing, *United States v. O'Neal*, 937 F.2d 1369, 1372 (9th Cir.1991); *United States v. Stinson*, 943 F.2d 1268 (11th Cir.1991); *United States v. Walker*, 930 F.2d 789 (10th Cir.1991); *United States v. Alvarez*, 914 F.2d 915 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991); *United States v. Goodman*, 914 F.2d 696 (5th Cir.1990)).

■ Hence, without question, the defendant's conduct permitted a judge to sentence him to a term of 120 months under the 1989 Guidelines, as interpreted at the time of the offense by this circuit and others. The Commission's decisions to alter the crimes which may give rise to sentencing as a career offender and to allow that change to serve as grounds for a reduction in the sentences imposed on defendants sentenced under an earlier version of the Guidelines do not change the fact that is central to the *ex post facto* issue in this case—the defendant was on notice that his conduct could result in the sentence he received. Thus, even if, as other circuits have stated, the application of the 1991 Guidelines may violate the *Ex Post Facto* Clause, the 1991 amended commentary would not be used in applying the 1989 Guidelines.

### III.

Under either the 1989 Guidelines or 1991 Guidelines, the defendant cannot escape his sentence of 120 months imprisonment. The district judge should have used the 1991 Guidelines but, as discussed earlier, his use of the 1989 Guidelines led to the same result that would have occurred under the later version and there was no plain error. Finding the defendant's other challenges meritless and not warranting discussion, we AFFIRM his sentence.