**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Susan P. ROBINSON, Defendant–Appellant.**

**No. 93–2128.**

United States Court of Appeals, Seventh Circuit.

Argued March 2, 1994.

Decided March 25, 1994.

John W. Vaudreuil, Asst. U.S. Atty., Larry Wszalek (argued), Office of U.S. Atty., Madison, WI, for plaintiff-appellee.

C. Peter Erlinder (argued), St. Paul, MN, for defendant-appellant.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Susan P. Robinson pled guilty to the robbery of six banks, 18 U.S.C. § 2113(a), and was sentenced to 135 months' imprisonment and required to pay $24,358 as restitution. She raises ten issues on appeal. We affirm.

### Background

In 1992, Robinson was a 41-year-old third-year law student in Minnesota. She committed six bank robberies in Wisconsin within three months. In October 1992, a search warrant was executed at defendant's home in Minneapolis. Defendant was indicted in the Western District of Wisconsin for the six Wisconsin bank robberies. Later that month, the District of Minnesota ordered that defendant be detained and transported to the Western District of Wisconsin, where she was arraigned. Following the denial of defendant's motion for a change of venue, which was summarily affirmed by this court,[1] defendant pled guilty to all six counts of bank robbery.

---

1. *In re Robinson,* No. 93–8015 (7th Cir. March 4, 1993) (unpublished order).

## Discussion

### I. Waiver

A number of the issues raised by defendant and addressed later in this opinion can be disposed of on waiver grounds. Generally, a defendant who fails to raise a sentencing challenge before the sentencing court waives the issue on appeal. *United States v. Rivero*, 993 F.2d 620, 622 (7th Cir.1993). In addition, a plea of guilty constitutes a waiver of non-jurisdictional defects occurring prior to the plea. *United States v. Markling*, 7 F.3d 1309, 1312 (7th Cir.1993). An exception exists if the plea is conditioned on preserving specified issues for appeal. That conditional plea should be in writing, Fed.R.Crim.P. 11(a)(2), but we have held that the conditions can also be sufficiently indicated in a transcript of the sentencing hearing. *United States v. Yasak*, 884 F.2d 996, 999 (7th Cir. 1989). In this case, however, there is no writing indicating the existence of a conditional plea, and nothing in the transcript indicates the existence of any type of plea agreement at all. *Cf. Markling*, 7 F.3d at 1313 (government agrees with defendant that plea was conditioned on reservation of right to appeal ruling on motion to suppress; letter from government outlines conditions of plea). The transcript shows the contrary:

"THE COURT: Do you understand that this is not pursuant to a plea agreement?

DEFENDANT: Yes.

\* \* \*

THE COURT: The letter which the court has received from the government in this matter advises that there is no plea agreement between you and the government. Is that your understanding?

DEFENDANT: Yes."

Throughout the two volumes of pleadings and nine volumes of transcripts, there is not even a hint that a plea agreement ever existed. Defendant maintains (and the govern-

ment does not disagree) that at some point the government offered to allow her to plead guilty to *one* of the six counts, and the other five would be dismissed. She purportedly accepted,[2] but asked for a change of venue. The government allegedly refused to accept this condition, and the case proceeded to trial.[3] Even when a defendant pleads guilty unconditionally or fails to object at sentencing, the court may review non-jurisdictional errors for plain error. Fed.R.Crim.P. 52(b). Of the issues addressed below which were waived, however, we find that no error occurred, and thus it is not necessary to consider the "plain" or prejudicial aspects of the plain error doctrine.

### II. Acceptance of Responsibility After Untimely Guilty Plea

Defendant argues that the court abused its discretion in refusing to reduce her sentence a third level for acceptance of responsibility. This was not challenged at the sentencing hearing, and thus has been waived. *United States v. Rivero*, 993 F.2d at 623. The court may review for plain error. *Id.* A sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error. *United States v. Seacott*, 15 F.3d 1380 (7th Cir.1994); *United States v. Kopshever*, 6 F.3d 1218, 1222 (7th Cir.1993). The district court's finding of whether a defendant has accepted responsibility is factual and will be overturned only if clearly erroneous. *United States v. Yanez*, 985 F.2d 371, 374 (7th Cir. 1993). The defendant bears the burden of proving by a preponderance of the evidence that she is entitled to a reduction under 3E1.1(b). *Rivero*, 993 F.2d at 622.

The district court adopted the PSI's recommendation that a two-level reduction for acceptance of responsibility was appropriate, but a third level was not warranted because the guilty plea was not timely. The United

---

**2.** As is true throughout the brief, except for a few references to the Pre–Sentence Investigation (PSI) report, defendant includes no citations to the record, making it very difficult to verify any factual assertions made in her brief.

**3.** There is a letter from defendant's former law professor (and present counsel before this court)

to the sentencing judge, mentioning the early plea negotiations: "Early on, [the government] offered to allow Ms. Robinson to plead to one count of the charged offenses. Because of my attempts to have the case transferred, Ms. Robinson did not accept that offer in a timely manner."

States Sentencing Guidelines (U.S.S.G.) permits a two-level reduction for acceptance of responsibility, and an additional level of reduction if authorities have been assisted in the investigation by defendant's:

"(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." U.S.S.G. § 3E1.1(b).

The commentary adds the following:

"Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction ... will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, Commentary, Application Note 3.

Defendant maintains that she is being punished for pursuing a motion to change venue prior to pleading guilty.[4] Defendant argues that the "only reason for any delay in formally entering her plea of guilty was a constitutional issue [right to counsel of choice] that related to the place of sentencing, not to her culpability."

The record clearly shows defendant was challenging her culpability, not merely seeking a more convenient "place of sentencing." The most telling fact is the absence of any indication that defendant then wished to change venue and have Professor Erlinder represent her for the purpose of facilitating the negotiation of a fair plea agreement, entering a guilty plea, and proceeding on to the sentencing hearing. The motion for change of venue expressly cites Fed. R.Crim.P. 21, which applies to requests for transfer for purposes of proceeding to *trial*. The arguments before the district court and the district court's decision analyzed the various factors relevant under Rule 21. If defendant wanted a change of venue for the limited purpose of entering a guilty plea, the Rule 21 factors such as convenience of parties and witnesses would have no applicability.[5]

It is Rule 20(a) which permits transfer from one district to another for purposes of entering a plea of guilty and sentencing in the district where defendant was found, such as when defendant is arrested at her home for a crime she committed elsewhere. *See* 2 Charles A. Wright, Federal Practice & Procedure: Criminal 2d §§ 321–323 (1982).

Even if the motion had not cited Rule 21(b), the record fails to indicate defendant was seeking a change of venue for any purpose other than to go to trial. The district court record contains numerous arguments on this issue from defendant herself, from Professor Erlinder, and from both of the attorneys appointed as defense counsel. All arguments imply that if the motion for change of venue were granted, defendant would proceed to trial. For example, in one letter defendant wrote to the magistrate judge that the change of venue was vital so that she could more easily "prepare a defense. Anyone I need to contradict or disprove government evidence is in Minnesota.... That is one my points, access to trying to obtain the evidence has been cut off. Professor Erlinder has arranged for expert witnesses who need access to me in preparing a defense."

Still, defendant insists that "it was clear to all parties that defendant intended to plead guilty and that preparation for trial was not necessary." The only reference to any plea negotiations is in Professor Erlinder's letter quoted above. The pre-trial proceedings

---

4. On March 3, 1993, this court issued an unpublished order denying defendant's petition for writ of mandamus following the district court's denial of defendant's motion for change of venue. *In re Robinson*, No. 93–8015 (7th Cir. March 4, 1993). The next day, defendant informed the government that she intended to plead guilty.

5. Similarly, Rule 18's provision for fixing the place of trial and its concern with the convenience of the defendant and the witnesses do not apply for purposes of entering a guilty plea. Fed.R.Crim.P. 18.

were extensive, but not due to plea negotiations. Instead, the pre-trial proceedings indicated defendant was challenging the factual case being prepared by the government. For example, defendant filed a motion *in limine* to suppress statements she made to the police during the execution of a search warrant at her home, arguing that she was not advised of her *Miranda* rights. Defendant also filed motions for disclosure of destruction of evidence, for discovery and inspection of evidence, for exculpatory evidence, and for early disclosure of Jencks Act material. The parties filed proposed questions for *voir dire*, motions *in limine*, proposed jury instructions, and verdict forms. The government filed a demand for notice of defendant's intention to offer a defense of alibi. (While defendant was given several deadlines, there is no response in the record.) The government also maintains that it prepared 35 witnesses and assembled 70 exhibits. Pre-trial hearings were held, and numerous pre-trial orders were entered.

Given this chain of pre-trial events, defendant has failed to show by a preponderance of the evidence that she demonstrated her "acceptance of responsibility" to the district court in a timely fashion. The district court did not err in denying defendant a third point of reduction for early acceptance of responsibility. *See United States v. Robinson*, 14 F.3d 1200 (7th Cir.1994) (guilty plea filed four days before trial did not entitle defendant to extra one point reduction under § 3E1.1(b)(2)); *United States v. Tolson*, 988 F.2d 1494, 1499 (7th Cir.1993) (guilty plea filed on morning of trial did not entitle defendant to § 3E1.1 reduction; "last minute formalistic demonstration of remorse after the government has been forced to expend a great deal of time and resources in gathering an overwhelming case"); *United States v. Skinner*, 986 F.2d 1091 (7th Cir.1993) (guilty plea filed on day of trial did not entitle defendant to § 3E1.1 reduction).

## III. Venue/Right to Counsel of Choice

 Defendant argues that the government chose "one proper venue over another" and thereby forced defendant to accept appointed counsel when retained counsel in Minnesota[6] was ready to represent her.[7] Once defendant entered an unconditional plea of guilty, she waived this issue. *Markling*, 7 F.3d at 1312. The decision whether to transfer venue will be reversed only for an abuse of discretion. *United States v. Smith*, 918 F.2d 1551, 1556 (11th Cir.1990). No abuse of discretion has been shown.

 Moreover, the Sixth Amendment right to counsel of choice (*Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)) "does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case." *United States v. McGinnis*, 796 F.2d 947, 951–52 (7th Cir.1986), quoting *Spurlark v. Wolff*, 683 F.2d 216, 220 (7th Cir.1982), *vacated on rehearing on other grounds*, 699 F.2d 354 (7th Cir.1983) (en banc). The right is not absolute. *United States v. Rasmussen*, 881 F.2d 395, 401 (7th Cir.1989). The court made every effort to accommodate defendant's request ..., however, the "exercise of that right [to counsel of choice] must at times give way to the need for a fair and efficient administration of justice." *McGinnis*, 796 F.2d at 952 quoting *United States v. Cicale*, 691 F.2d 95, 106 (2d Cir.1982). The district court's decision on this issue was not "unreasoning and arbitrary." *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983).

## IV. Breach of Plea Agreement

 Defendant argues that the government refused to "abide by the original plea agreement." Defendant waived the issue by not arguing before the district court that the government was breaching a plea agreement. *United States v. Eibler*, 991 F.2d 1350, 1353 (7th Cir.1993). Moreover, as detailed above, defendant points to nothing in the record

---

**6.** Peter Erlinder, one of defendant's former law professors in Minnesota, had offered to defend her as private counsel but only if venue were changed to Minnesota. He is now representing defendant before this court in the present appeal.

**7.** As mentioned above, defendant's motion for change of venue was denied, and this court affirmed the denial. *In re Susan P. Robinson*, No. 93–8015 (7th Cir. March 4, 1993) (unpublished order).

indicating that the parties ever entered into any plea agreement at all. Nor was the government under an obligation to enter into a plea agreement. It can reject a conditional plea for any reason or not reason at all. *Yasak*, 884 F.2d at 999.

## V. "Threat of Death" with a Toy Gun

▉ Defendant next contends that the sentencing court erred in finding that she made a threat of death.[8] The issue was not raised at the sentencing hearing and thus the issue was waived. *Rivero*, 993 F.2d at 662. On review for plain error, we find that no error occurred. Under U.S.S.G. § 2B3.1(b)(2)(F), a two-level increase is required "if an express threat of death was made." The commentary defines the term:

> An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill *in a reasonable person,* who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery. U.S.S.G. 2B3.1, Commentary, Application Note 7 (emphasis added).

In the present case, in one robbery defendant stated "I have a gun and am not afraid to use it," but the teller did not see a gun. In another robbery defendant told the teller that she had a gun, but the teller was not afraid for her life. In a third robbery, the defendant said she had a gun and would "spray" the teller; the teller stated she did not see a gun but believed defendant would shoot her. In a fourth robbery, defendant gave the teller a note saying "This is a stickup. I have a gun." The teller did not see a gun, but believed this was a threat that could ultimately mean her death. In a fifth robbery, the teller did not see a weapon, but defendant's note "said something about a gun, shoot and bills."

These statements would create "significantly greater fear than that necessary to constitute an element of the offense of robbery" in a "reasonable person" in the bank teller's position. U.S.S.G. § 2B3.1(b)(2)(F), Application Note 7. *See, e.g., United States v. Hoslett,* 998 F.2d 648 (9th Cir.1993) ("Give me the money or I will shoot" permits enhancement for "express threat of death" under guidelines); *United States v. Lambert,* 995 F.2d 1006 (10th Cir.) (statement to bank teller, "the person behind me will shoot someone" is an express threat of death under the guidelines), *cert. denied,* — U.S. —, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Smith,* 973 F.2d 1374, 1375 (8th Cir.1992) (when bank teller asked if robber was serious, defendant gestured as if holding a weapon under his coat and said, "You don't want to find out"); *United States v. Eaton,* 934 F.2d 1077, 1079 (9th Cir.1991) (defendant with "simulated gun" told bank teller, "Give me all your money or I'll shoot"; court states that it is not necessary to use the word "death"); *United States v. Strandberg,* 952 F.2d 1149, 1151 (9th Cir.1991) (defendant gesturing as if he had a concealed weapon told bank teller not to "pull the alarm or my friend will start shooting").

No error occurred. The district court properly enhanced the sentence under U.S.S.G. § 2B3.1 for use of an express threat of death in four of the six robberies.

---

**8.** The district court noted that defendant not only endangered her victims, "but also permanently altered the lives of at least two of the tellers she robbed. They suffered psychological injury much more serious than that normally resulting from the commission of a robbery by the defendant. One victim referred to the experience as 'total terror' and the other resigned from her employment in the banking industry." The court declined, however, to enhance the sentence under § 5K2.3 for extreme psychological injury and instead found that "a sentence at the top of the guidelines is more appropriate than a departure."

Defendant relies on cases from the Eleventh Circuit, which in some cases has taken a somewhat restrictive approach to interpreting "express threat of death." To the extent that the Eleventh Circuit has insisted on more explicit language before finding an "express threat of death," we disagree with its holdings. *See United States v. Moore,* 6 F.3d 715, 721–22 (11th Cir.1993) (bank robber's note states: "I have a gun and nothing to lose. 100s and 50s. No dye money"; court found clear error in enhancement because the note "could be interpreted to mean that [defendant] was desperate and willing to turn the alleged gun on himself, not the teller"); *United States v. Tuck,* 964 F.2d 1079, 1080 (11th Cir.1992) (bank robber told the teller, "if she did anything funny he would be back"; clear error to enhance the sentence because threatening to "come back" may have "implied physical harm, and may well have implied death," but it simply was not a "direct, distinct or express" threat of death); *United States v. Canzater,* 994 F.2d 773, 774–75 (11th Cir.1993) (bank robbers said, "In the bag a gun 100s and 50s," "Gun, money, no tricks," or "We have weapons, money fast, no tricks," or "I have a gun and give me your money"; court finds clear error because the "notes do not distinctly indicate a threat of death," and instead imply only a threat to "use the gun, but that does not constitute an express death threat").

## VI. Toy Gun as a "Dangerous Weapon"

■ As to Count VI, defendant argues that the sentencing court erred in enhancing her sentence three levels based on her possession of a "dangerous weapon" which was actually only a toy gun.[9] Defendant did not challenge the enhancement at the sentencing hearing and thus has waived the issue. This court may review for plain error. *Rivero,* 993 F.2d at 623. Section 2B3.1(b)(2)(E) permits a three-level enhancement if a "danger-

ous weapon was brandished, displayed, or possessed." The Guidelines define "dangerous weapon":

"Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury. Where an object that *appeared* to be a dangerous weapon was brandished, displayed, or *possessed,* treat the object as a dangerous weapon. U.S.S.G. § 1B1.1, Commentary, Application Note 1(d) (emphasis added).[10]

■ Thus, under the sentencing guidelines, it is enough that defendant "possessed" a gun. *See, e.g., United States v. Koonce,* 991 F.2d 693 (11th Cir.1993) (where BB gun looks like a real firearm and is perceived by the victim of a post office robbery as a firearm it is proper to enhance sentence for use of "dangerous weapon," but not for use of a "firearm"); *United States v. Dixon,* 982 F.2d 116, 122 (3d Cir.1992) (bank robber's sentence properly enhanced for brandishing and possessing a dangerous weapon where she pointed menacingly at tellers with towel draped hand that employees believed concealed a gun; robber "certainly possessed her hand and the towel" and "brandished them to good effect"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2371, 124 L.Ed.2d 276 (1993); *United States v. Shores,* 966 F.2d 1383 (11th Cir.) (toy gun warranted three-level increase under § 2B3.1(b)(2)(C) for use of dangerous weapon; bank robber possessed but did not display toy gun), *cert. denied,* —— U.S. ——, 113 S.Ct. 353, 121 L.Ed.2d 268 (1992).

Defendant offers the interesting argument that the court should read "possession" to mean the possession was "in a manner that aided or facilitated the robbery." Nothing in the Guidelines supports this argument. To accept defendant's view would be to equate possession and brandishing or, in the alternative, to require proof that possessing a concealed weapon gave defendant courage to commit the crime. It would also mean if the weapon was concealed it would have to be

---

9. The PSI indicates defendant admitted she carried a toy gun in her last bank robbery. The surveillance camera also shows she carried a gun.

10. The commentary to § 2B3.1(b)(2)(E) is similar: "When an object that *appeared* to be a dan-

gerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E)." U.S.S.G. § 2B3.1, Commentary, Application Note 2 (emphasis added).

real, since a concealed toy gun obviously could not "appear" to be a real weapon since no one would actually see it.

Defendant also points to cases construing 18 U.S.C. § 2113(d) (use of "dangerous weapon" is a necessary element under this section for armed bank robbery).[11] *See McLaughlin v. United States,* 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986) (construing § 2113(d), where Congress was concerned with dangerous weapons inciting fear and apprehension in victims). Defendant argues that the gun could not have instilled fear in the victims when no one saw the gun in her hand. As stated, however, the Guidelines provide that possession is enough. The statutory definition of dangerous weapon and the Guidelines definition are not truly analogous. In contrast to § 2113(d) of the armed bank robbery statute, U.S.S.G. § 2B3.1(b)(2)(E) permits enhancement for a dangerous weapon that is "brandished, displayed or possessed." *See United States v. DeAngelo,* 13 F.3d 1228 (8th Cir.1994) (bank robber's starter gun, typically used to start races, was not a dangerous weapon under 18 U.S.C. § 2113(d); bank manager, an experienced hunter, saw the gun and thought it was a real gun); *United States v. Perry,* 991 F.2d 304 (6th Cir.1993) (notwithstanding teller's fear that defendant might be armed, defendant's mere possession of a toy or wooden gun which he did not display or allude to did not constitute the use of a dangerous weapon under armed bank robbery statute, 18 U.S.C. § 2113(d)).

## VII. Mace Causing "Bodily Injury"

▮ Defendant next maintains that the sentencing court erred in enhancing the sentence for "bodily injury" based on her spraying mace at the bank tellers. This issue was not raised at sentencing and thus was waived. *Rivero,* 993 F.2d at 662. The court may review for plain error. The district court enhanced the sentence two levels under U.S.S.G. § 2B3.1(b)(3)(A) for "bodily injury" because in two of the robberies, defendant

sprayed the tellers with mace or pepper-guard.[12]

"Bodily injury" means any significant injury; *e.g.,* an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought. As used in guidelines, the definition of this term is somewhat different than that used in various statutes. U.S.S.G. § 1B1.1, Commentary, Application Note 1(b).

The bank tellers who were sprayed experienced pain which lasted for hours and had some residual effect for days. The district court could properly make the factual finding that this was painful and obvious. *Cf. United States v. Dukovich,* 11 F.3d 140, 142–43 (11th Cir.1994) (defendant sprayed tear gas into bank where victims were prone on floor and victims suffered burning sensation in faces and throats, eye pain and severe headaches, the gas struck one teller near her eye; two women were visibly pregnant; tear gas is a dangerous weapon and is capable of inflicting death or serious bodily injury as defined in § 1B1.1, comment n. 1(b)); *United States v. Brown,* 508 F.2d 427, 430 (8th Cir.1974) (loaded tear gas gun is dangerous weapon under statute which prohibits carrying dangerous weapons on aircraft; tear gas can cause great bodily harm in the form of powder and chemical burns).

The Fourth Circuit went the other way in *United States v. Lancaster,* 6 F.3d 208, 210–11 (4th Cir.1993), when they upheld a finding of no "bodily injury" under § 2B3.1(b)(3), in a case where a bank robber sprayed mace in a security guard's eyes. "While the burning in [the guard's] eyes and cheeks caused by the mace was undoubtedly unpleasant, and could not be described as wholly trivial, it was only momentary and the mace produced no lasting harm." *Id.* In contrast to the evidence here, the security guard in *Lancaster* apparently testified that the effects were only momentary. Moreover, the court in *Lancaster* was deferring to factual findings made by the district court. *See United States v. Hamm,* 13 F.3d 1126 (7th Cir.1994)

---

11. Defendant here plead guilty to simple bank robbery under § 2113(a), not armed bank robbery under § 2113(d).

12. The distinction, if any, between the two was never made clear in the record, despite the district court's request for such information.

(finding *Lancaster* consistent with court's holding that "bodily injury" occurred when bank robber suffered bumps and bruises and back injury, because *Lancaster* involved the government's appeal from the district court's refusal to enhance, and the clear error standard required affirmance).

The district court properly enhanced the sentence two levels based on defendant's having caused bodily injury.

## VIII. "Physical Restraint" from Spraying Mace

 Defendant contends that the sentencing court erred in enhancing her sentence for "physically restraining" the tellers by spraying mace. This issue also was waived, since it was not raised in the district court. Under U.S.S.G. § 2B3.1(b)(4)(B), which requires a two-level increase if "any person was physically restrained to facilitate commission of the offense or to facilitate escape," the district court increased the offense level on the basis that spraying mace during two of the robberies caused the tellers to be "physically restrained ... to facilitate [the robber's] escape." "Physically restrained" is defined in the Guidelines:

> "Physically restrained" means the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, Commentary, Application Note 1(i).

 No doubt spraying mace was meant to facilitate a quick escape from the bank. However, while the effects may last for hours, it would not "restrain" a person, *i.e.,* keep the person from moving from his present position, for hours. As a restraining device used by bank robbers, it certainly is less effective than locking victims in a room or tying them. *Cf. United States v. Doubet,* 969 F.2d 341, 347 (7th Cir.1992) (leading the bank tellers into an isolated but unlocked restroom, and threatening to blow their heads off if they peeked out, "served as a figurative lock and key sufficient to constitute a physical restraint which facilitated the commission of the offense"). Because a person experiencing burning in her eyes and throat may have difficulty chasing after a bank robber and will be restricted in move-

ment for some period of time, "physical restraint" is satisfied here since defendant created a "chemical wall" that physically restrained the victims. Moreover, mace and tear gas are considered "dangerous weapons" which can inflict "bodily injury" (*see* section VII, *supra*). *Cf. United States v. Benjamin,* 995 F.2d 756, 759 (7th Cir.1993) (defendant was "seized" for purposes of Fourth Amendment when police officer maced him).

Because of the factual variables involved (such as how close the robber was to the victim when she was sprayed and whether or not she was sprayed directly in the face), the district court's factual findings regarding the tellers' sense of being injured, paralyzed or restrained by the mace resulted in the court's proper application of the guideline in question.

## IX. Restitution

 Defendant maintains that the sentencing court abused its discretion in both ordering restitution and imposing a prison sentence. There is no error. The district court properly adopted the PSI's conclusion that, given defendant's educational level, she would have the ability to secure legitimate employment and make complete restitution of $24,358. There was no abuse of discretion in the district court's imposing restitution as part of defendant's sentence. *See e.g., United States v. Hamm, supra,* (sentence of 96 months' imprisonment and restitution of $40,-100 imposed for one count of bank robbery); *United States v. Windsor,* 981 F.2d 943, 944 (7th Cir.1992) (sentence of 24 years' imprisonment and $6,267 in restitution imposed for one count of aggravated bank robbery).

## X. Federally Insured Status of Bank

Defendant finally argues that the sentencing court had no jurisdiction to accept her guilty plea as to Count V because the government failed to show the bank in question was federally insured. The record shows the FDIC-insured status was established for this bank. At the plea hearing the judge asked, "Do you agree that all of the institutions named are insured by the FDIC?" and defendant responded, "Yes."

## Conclusion

Accordingly, the judgment of the district court is AFFIRMED.