UNITED STATES of America,
Plaintiff–Appellee,

v.

James E. DVORAK, Defendant–Appellant.

No. 96–2265.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1996.

Decided June 17, 1997.

As Amended Aug. 7, 1997.

Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Division, Gil M. Soffer (argued), Office of the United States Attorney, Chicago, IL, for plaintiff–appellee.

Matthias A. Lydon (argued), Brian E. Neuffer, Winston & Strawn, Chicago, IL, for defendant–appellant.

Before POSNER, Chief Judge, and COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

In April 1994, defendant-appellant James Dvorak (Dvorak) pleaded guilty to accepting bribes and tax evasion while serving as Undersheriff of Cook County, Illinois from 1987 through 1989. Dvorak was sentenced on April 28, 1994 to forty-one months' incarceration. He appealed his sentence, and we affirmed.[1]

Dvorak at the time of sentencing claimed that he was then admitting all of the illegal conduct in which he had engaged while serving as Undersheriff.[2] That statement has proven to be less than truthful, as Dvorak was subsequently indicted and in fact pleaded guilty to a one-count information charging him with mail fraud, which the defendant committed in the course of hiring "ghost payrollers" and hiring unqualified individuals while serving as Undersheriff during the same time frame (1987 through 1989). In this appeal Dvorak challenges the sixty months' sentence he received for mail fraud. We affirm.

## I. Background

Dvorak successfully managed James O'Grady's 1986 campaign for Sheriff of Cook County, Illinois. After O'Grady's election, in January 1987 Dvorak was appointed Undersheriff, the second highest post in the Sheriff's Department. As Undersheriff, Dvorak was responsible for making the personnel decisions in the office, including the approving as well as the hiring and promotion of employees.

---

1. *See United States v. Dvorak,* 41 F.3d 1215 (7th Cir.1994).

2. The Assistant U.S. Attorney, who stated that he had read the transcript of Dvorak's initial sentencing hearing, made this representation to the court at the time of sentencing in the present case, and Dvorak did not challenge that representation.

Commencing in February 1987, Dvorak, with the assistance of James Hogan (Hogan), who served as Dvorak's immediate subordinate in the position of Director of Personnel, devised a two-part fraudulent hiring scheme aimed at providing jobs to individuals who were favored, for personal or political reasons, by either Dvorak or Hogan. The scheme entailed the hiring of a number of individuals in various law enforcement positions within the domain of the Sheriff's Department, despite the fact that the applicants had failed to achieve passing scores on qualifying merit examinations. To execute the plan, Dvorak would review the list of applicants Hogan provided and determine which of the individuals should be given preferential treatment. Dvorak would mark the lists to indicate the individuals he wanted to hire, and return the list to Hogan, who would in turn select others he wished to receive preferential treatment. Hogan would deliver the list to lower-level employees in the office responsible for the grading of the exams, and these employees, under orders from Dvorak and Hogan, would assign passing grades to the designated individuals even if they failed the exams. These favored individuals would thus become eligible for positions within the Sheriff's Department despite having failed to qualify. According to the Government's version of the scheme submitted at sentencing (which Dvorak did not dispute), over 300 individuals were rated as qualified and received jobs despite having failed to pass the qualifying merit exam.

Another part of the defendant's scheme consisted of the hiring and placing on the Department's payroll of individuals whom Dvorak well knew would do little or no work in their designated positions. These "ghost payrollers" were usually either friends or relatives of people who had assisted Dvorak in his political career, or individuals who had worked for or supported O'Grady's campaign, and Dvorak put them on the Department's payroll to reward their political sup-

port. To facilitate the plan, Dvorak directed Hogan to place the names of the "ghost payrollers" on time sheets under the heading of "Security" or "Undersheriff," fill in fraudulent work hours, forge their signatures, and sign Hogan's name as verification. Dvorak arranged for seventeen individuals to be placed on the Sheriff's Office payrolls in this manner, and the individuals received a total of $550,545.87 in salary and benefits from 1987 through 1990, during which time they performed little or no work.[3]

Dvorak resigned as Undersheriff in November 1989. Nonetheless, he continued to *make recommendations concerning personnel decisions within the Sheriff's Office*, including decisions relating to the "ghost payrollers," until November 1990, when Hogan resigned as Director of Personnel. Investigators from the FBI uncovered the fraudulent hiring scheme subsequent to the departure of Dvorak and Hogan from the Sheriff's Department. On September 20, 1995, some seventeen months after he was sentenced for bribery and tax evasion, Dvorak was charged by information with a single count of mail fraud in furtherance of the fraudulent hiring scheme, a charge premised upon the mailing, under Dvorak's direction, of a salary check to one of the "ghost payrollers," in violation of 18 U.S.C. § 1341 and § 1346.[4]

In describing the fraudulent hiring scheme, the information alleged that Dvorak "hired individuals to work at jobs for which they were not qualified and [also] hired and retained 'ghost payrollers.'" Dvorak pleaded guilty to mail fraud, as charged in the information, without the benefit of a plea agreement.

At sentencing, the district court found that Dvorak's adjusted offense level under § 2F1.1 of the Sentencing Guidelines was twenty.[5] On motion of the Government, and over Dvorak's objection, the judge imposed a four-level upward departure based upon two

---

**3.** Throughout this opinion the hiring of ghost payrollers and unqualified individuals will be referred to collectively as the "fraudulent hiring scheme."

**4.** In 1994, Hogan pleaded guilty to charges stemming from this scheme, and his sentence was

upheld in *United States v. Hogan*, 54 F.3d 336 (7th Cir.1995).

**5.** Dvorak does not challenge the calculation of his adjusted offense level on appeal.

findings. First, the judge found that "the risk of putting unqualified people on the payroll [of the Sheriff's Department]" warranted a two-level upward departure. He based this finding on Application Note 10(a) to Guideline § 2F1.1, which states that an upward departure is appropriate when "the fraud caused or risked reasonably foreseeable, substantial non-monetary harm." Second, he found that the hiring of unqualified individuals caused "harm to the public's trust in the Cook County Sheriff's Department." The trial judge thus departed upward two more levels based on Application Note 10(e) to Guideline § 2F1.1, which authorizes a departure when "the offense caused a loss of confidence in an important institution."

The Government also sought an increase in Dvorak's criminal history category pointing out to the court his previous conviction and sentence for accepting bribes and tax evasion. As noted, Dvorak pleaded guilty in 1994 to two federal criminal counts, bribery and tax evasion, and was serving time for those offenses when he was charged with mail fraud in connection with the fraudulent hiring scheme.[6] The Government argued that the bribery and tax evasion offenses were separate and distinct criminal offenses unrelated to the fraudulent hiring scheme, and therefore the convictions could be counted in determining Dvorak's criminal history category. The defendant-appellant disagreed and claimed that the bribery and tax evasion offenses were part and parcel of the overall fraudulent hiring scheme and related thereto, and thus could not be taken into account when computing his criminal history category.

**6.** The indictment in the bribery and tax evasion case alleged that Dvorak had accepted the use of eight free automobiles from individuals who sought to receive contracts to provide vehicles to the Sheriff's office, and also alleged that Dvorak accepted a gold Rolex watch valued at $8000 from a deputy sheriff, who sought to achieve job security with the purchase and delivery of the watch.

**7.** The mail fraud statute which Dvorak was charged with violating provides for a maximum sentence of 60 months. *See* 18 U.S.C. § 1341.

**8.** Application Note 10 authorizes an upward departure where the harm caused by the fraud

The trial judge agreed with the Government and found that the prior bribery and tax evasion convictions were *not* related to the mail fraud offense and concluded that they *could* be considered in computing Dvorak's criminal history category. With the addition of points for his prior convictions, Dvorak's criminal history category rose from I to II. *See* U.S.S.G. § 4A1.1(a). Based on these findings, the applicable sentencing range for Dvorak's offense was 57–71 months.[7] The judge sentenced Dvorak to sixty months, with twenty months of the period of confinement to run concurrently with the sentence he was then serving on his previous convictions, and forty months to run consecutively.

## II. Discussion

### A. The upward departure

Dvorak does not claim that the trial court relied upon improper factors in deciding to depart upward,[8] nor does he challenge the extent of the departure. Rather, he argues that the Government "manipulated the criminal information" by charging him with just a single count of mail fraud in furtherance of the fraudulent hiring scheme. Dvorak asserts that "[t]he criminal information describes two different offenses—a ghost payrolling scheme, and an unqualified hiring scheme." Br. of Appellant at 12. Dvorak claims that, had the Government charged him with two separate mail fraud counts, one for the ghost payroll hiring and another for the hiring of unqualified individuals,[9] the two counts would have been "grouped" for sentencing purposes under Ch. 3, Pt. D of the Sentencing Guidelines. In

cannot be adequately measured simply by examining the financial loss. It cites six examples of when such a departure would be warranted. The district court relied on example (a), which applies when "a primary objective of the fraud was non-monetary; or the fraud caused or risked reasonably foreseeable, substantial non-monetary harm," and example (e), where "the offense caused a loss of confidence in an important institution."

**9.** Dvorak alleges that charging him in separate counts would be "the usual practice," but nowhere offers any support or proof for this assertion.

Dvorak's view, the count based on ghost payroll hiring would have had the higher offense level of the two charges comprising the group, and the charge based on unqualified hiring would have merged into the ghost payroll charge for sentencing purposes. Thus, the defendant concludes that, had he been charged with separate mail fraud counts, he would not have received an upward departure in his sentence. We review the sentencing judge's decision to depart from the Guidelines for an abuse of discretion. *Koon v. United States*, —— U.S. ——, ————, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996); *United States v. Purchess*, 107 F.3d 1261, 1270 (7th Cir.1997); *see United States v. Wyatt*, 102 F.3d 241, 246 n. 7 (7th Cir.1996).

Section 3D1.2 of the Guidelines provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." 1995 U.S.S.G. § 3D1.2. Pursuant to § 3D1.3(a), the sentence of a defendant who is being sentenced for multiple counts which have been grouped is calculated as if the defendant were being sentenced for "the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group." 1995 U.S.S.G. § 3D1.3(a). However, the grouping provisions apply only to defendants who are being sentenced on *multiple* counts of conviction. *See* 1995 U.S.S.G. § 3D1.1(a) (describing procedure for grouping when "a defendant has been convicted of *more than one count*"); *United States v. Brown*, 47 F.3d 198, 202–03 (7th Cir.1995). Dvorak's information set forth a *single* count of mail fraud, and the facts as set forth in the information reveal that the charging of him with a single count was proper. The fraudulent hiring scheme was carried out over the same period of time when Dvorak was serving as Undersheriff. The scheme was conceived and executed for a single purpose, namely to provide political "payoffs" to those who had assisted in O'Grady's campaign and/or assisted Dvorak politically. Further, the result of both parts of the scheme was that qualified applicants were denied positions which were instead given to individuals who were either unqualified or who performed no work. Finally, Dvorak collaborated with Hogan in the planning and execution of both parts of the scheme. Given that the facts establish that Dvorak engaged in but a *single* fraudulent hiring scheme while serving as Undersheriff, we disagree with Dvorak's peculiar reasoning that the government should be compelled to charge him with multiple counts of mail fraud in furtherance of the scheme. *See United States v. Hammen*, 977 F.2d 379, 382–83 (7th Cir.1992) (ongoing bank fraud scheme could properly be charged in single count even though "scheme was executed numerous times").

Furthermore, as the Government points out, Dvorak merely speculates that the United States Attorney's office deliberately "manipulated" the information in an attempt to obtain a longer sentence and has failed to refer us to anything in the record which would even suggest such "manipulation." Dvorak points to a passage in the record where the Government sought to explain why Dvorak was charged in a single count:

> It's one hiring fraud scheme with different parts to it … they have two parts, there are two issues. Part of the scheme involves a lot of money, the loss of money that the ghost payrollers, people who didn't work, cost the county. And the other part of the scheme is the putting of people on the payroll, who hadn't passed the entrance exams and the promotions exams, and that part doesn't have a monetary component. And the law and the guidelines say that for the part that doesn't have a monetary component, a departure is appropriate. And, therefore, we're seeking a four-level upward departure on that part because with regard to the ghost part, money does take care of that. But with regard to the hiring part, there is no monetary loss and, therefore, a departure is appropriate, *and that's why we've structured it the way we have.* Tr. at 4 (emphasis added).

Dvorak claims that the last ten words of the above-quoted response constitute evidence that the Government "admitted that it structured the criminal information as a single count in order to seek an upward departure based on the unqualified hiring scheme." Br. of Appellant at 14. Review of the record,

however, makes clear that the Government was simply attempting to make clear to the court why the information was not duplicitous, and why its reasoning for the requested upward departure was warranted. We disagree with the defendant's self-serving statement that the above-cited comment raises suspicion that the Government "manipulated" the information in order that the court might be free to impose a longer sentence.

Dvorak's claim that the Government manipulated the information to enhance his sentence is further undermined by the fact that the Government did not recommend, even taking into account the departure, that the judge sentence Dvorak to a longer term than the sentence he could have imposed on Dvorak without the departure. With the departure, Dvorak could have received up to a maximum of seventy-one months of incarceration. In contrast, the Government recommended a fifty-month sentence, with twenty months to be served concurrently to the sentence he was then serving and the remaining thirty months to be served consecutively. As the judge recognized, he had the discretion to order Dvorak to serve his sentence "concurrently, partially concurrently or consecutively" to the sentence he was presently serving for the bribery and tax evasion convictions. *See* 1995 U.S.S.G. § 5G1.3(c); *see generally United States v. Plantan*, 102 F.3d 953, 956 n. 3 (7th Cir.1996); *United States v. Greer*, 91 F.3d 996, 1001 (7th Cir.1996) (noting that under 1995 version of Guidelines the district court is not required to consider, much less impose, a sentence on a defendant incarcerated for a prior crime which approximates the total combined sentence the defendant would have received had he been sentenced for the current and the prior offense at the same time).[10] Absent the departure, Dvorak's sentencing range (for an offense level of twenty) would have been from 37–46 months. Thus, not only did the Government's sentencing recommendation, which

called for Dvorak to serve thirty of the fifty months consecutively with his other sentences, recommend a considerably shorter time period of additional confinement than the maximum Dvorak could have received under the post-departure Guideline range, it did not suggest any additional time served than the judge could have sentenced Dvorak to *absent any departure at all.* Even if the district judge had not departed upward in Dvorak's offense level, he could have achieved the thirty-month incremental sentence sought by the Government by, for example, sentencing Dvorak to forty months, with ten concurrent and thirty consecutive. It's rather obvious that had the Government "manipulated" the information in order that it might gain an upward departure, it would at least attempt to achieve a post-departure sentence greater than that which it could have gotten *even without the departure.*

The district judge was apparently aware of this situation, for he specifically asked Dvorak's lawyer about the legal effect of consecutive versus concurrent sentencing:

THE COURT: Do you have any views ... does it make any difference to you as to whether or not the sentence here is consecutive or concurrent?

\* \* \*

What I'm getting to is right now under the guidelines, just under the guidelines I have determined that the sentence that's in front of me is anywhere from 37 to 46 months. That's a consecutive sentence. If I depart upwards, that would allow a sentence, depending on how far I went also, that goes even further upward in terms of consecutive sentences. But let's just say hypothetically that we're talking about 30 months.... *Does it matter to you if it's 30 months consecutive or does it matter to you if it's 50 months concurrent [with the 20 months Dvorak has left to serve]?* ... *I mean in the long run, as far as I'm*

10. Of course, as we will discuss further *infra*, Dvorak has no one but himself to blame for the fact that, at the time he was sentenced in this case, he was serving a prior sentence for the bribery and tax evasion charges he had pleaded guilty to in 1994. As the Government's lawyer advised the court, when Dvorak pleaded guilty to the bribery and tax evasion charges, he "stated

that he [had then] admitted all the illegal conduct in which he'd ever engaged." Tr.8. Now, two years thereafter, he admits to *"a massive ghost payrolling and hiring scheme." Id.* (emphasis added). Dvorak obviously did not admit *all* of his illegal conduct when pleading guilty in 1994.

*concerned, it seems to me that Mr. Dvorak would serve an additional 30 months [under either scenario].*

Tr. at 19. The trial judge reasoned that Dvorak, who was Hogan's superior and directed the actions of the other participants in the scheme (including Hogan), should serve at least as much time as Hogan received for the scheme (thirty months) and thus imposed a sentence slightly longer than the Government's recommendation—sixty months, with twenty months concurrent and forty months consecutive. Given the 37–46 month range Dvorak was facing without the departure, even this marginally longer sentence was not greater than what Dvorak could have received absent the departure, had the court sentenced him to a term of forty months or greater, with six months or less concurrent time.

The facts and issues presented in Dvorak's case are not similar or analogous to the facts and issues presented in the *Lieberman* case. In *United States v. Lieberman,* 971 F.2d 989 (3d Cir.1992), the Third Circuit upheld the decision of a sentencing judge to depart downward in a case in which the defendant was charged with two crimes, embezzlement and also tax evasion for failing to pay taxes on the money he embezzled. The district court in *Lieberman* found that the offenses could not be grouped for sentencing purposes and concluded that the defendant would be subject to an unwarranted enhanced punishment because he was charged with separate counts of embezzlement and tax evasion for what was essentially one crime. In the sentencing judge's view, that was contrary to the "objectives of the sentencing guidelines." 971 F.2d at 998. The district court stated "that, in its experience, it had never before seen a defendant charged with both embezzlement and tax evasion for the moneys he embezzled." *Id.* The sentencing judge concluded that:

> the result of this highly unusual situation where a defendant is charged both with the embezzlement and with the tax evasion of the very same money that he embezzled is unusual and constitutes ... an inappropriate manipulation of the indictment, which the Sentencing Commission asserts

that I can control through the use of departure.

*Id.* (quoting district court's opinion) (internal quotation marks omitted).

The Third Circuit in *Lieberman* affirmed the downward departure. It cited a policy statement in the Guidelines (upon which Dvorak also relies) which observed that the "most important" drawback of the "charge offense" system adopted by the Guidelines was "the potential it affords prosecutors to influence sentences by increasing or decreasing the number of counts in an indictment." *Id.* n. 9 (citing U.S.S.G. Ch.1, Pt.A, (4)(a) (Policy Statement)). But at the same time the court emphasized that, under the Guidelines, "a sentencing court may control any inappropriate manipulation of the indictment through use of its departure power." *Id.* The *Lieberman* court concluded that, if it were to hold that sentencing judges did not have the power to depart downward when they found that an indictment had been manipulated, "it would raise the prosecutor to a position supreme over the district judge vis-a-vis sentencing by virtue of the uncontrolled charging discretion." *Id.*

Despite the defendant's assertions that it is on-point, in our view *Lieberman* is inapposite to the case at bar. Unlike in *Lieberman,* in which the defendant was charged with two separate counts for what was essentially a single act of embezzlement, Dvorak was only charged with one crime, namely *mail fraud* in furtherance of the fraudulent hiring scheme. Further, in contrast with *Lieberman,* the district court did not find that the government "manipulated" the charging document, and we agree that no manipulation occurred in this case. Whereas in *Lieberman* the defendant would have received an enhanced sentence for what the district court thought was essentially a single crime absent a downward departure, no enhancement in Dvorak's sentence was sought by the Government. Any benefit which the Government would have achieved through the "manipulation" alleged by Dvorak came only in the form of the *opportunity* for the sentencing judge to make the *discretionary determination* that an upward departure was appro-

priate.[11] Thus, contrary to the defendant's argument, any "manipulation" here would not have placed the prosecutor "in a position supreme over the sentencing judge vis-a-vis sentencing," the concern animating *Lieberman*, since it was the trial judge who retained the ultimate authority to make the discretionary determination whether an upward departure was appropriate.

Finally, we note that throughout these proceedings Dvorak had the benefit of representation by counsel of his choice (the same counsel who represented him in his prior appeal). Had counsel thought the information as drafted was defective in some way at that time, such objection should have been raised *prior* to the entry of Dvorak's plea of guilty. Alternatively, counsel might have considered "request[ing] leave of the court to tender a conditional plea agreement, pursuant to Fed.R.Crim.P. 11(a)(2)," or asking "that the U.S. Attorney reindict him with a charge that he felt more accurately reflected his criminal acts." *United States v. Tolson,* 988 F.2d 1494, 1501 (7th Cir.1993).

In sum, Dvorak has failed to cite to a scintilla of evidence in the record which even *suggests* that the prosecutors "manipulated" the information, nor has he demonstrated any benefit (in terms of lengthening his sentence) that the Government sought to achieve

through such alleged "manipulation," and finally he has failed to cite any case law supporting his argument that the manner in which he was charged constitutes "manipulation" of the information.[12]

## B. Dvorak's previous sentence for bribery and tax evasion

Under Guideline § 4A1.1, a defendant's criminal history category is determined by adding points for any "prior sentence" the defendant has received. "Prior sentence" is defined in § 4A1.2(a)(1) as "any sentence previously imposed ... for conduct not part of the instant offense" which the defendant is already serving. The sentencing court concluded that the sentence Dvorak previously received for the bribery and tax evasion crimes in 1994 was a "prior sentence," in that it arose from conduct unrelated to the fraudulent hiring scheme. Pursuant to § 4A1.1(a), which states that when computing a defendant's criminal history category the court should add three points "for each prior sentence of imprisonment exceeding one year and one month," the judge added three points to Dvorak's criminal history category. This raised Dvorak's criminal history category from I to II. On appeal, Dvorak argues that the prior bribery and tax evasion charges were related to the mail fraud charge based upon the fraudulent hiring scheme, and thus his 1994 sentence on those charges should not have been consid-

---

11. Further, as noted *supra,* the sentence sought by the Government pursuant to the upward departure did not even exceed that which the court could have imposed absent a departure.

12. The Government has argued that Dvorak waived any challenges to the upward departure by pleading guilty to the indictment as charged. The Government refers us to the rule, stated in *United States v. Tolson,* 988 F.2d 1494 (7th Cir. 1993), that "a defendant who pleads guilty to an indictment voluntarily and with the assistance of counsel before a United States district court judge may not challenge the facts of the indictment on appeal." 988 F.2d at 1500–01. The Government also points to the Supreme Court's decision in *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), where the Court stated: "Just as a defendant who pleads guilty to a single count admits guilt of a specified offense, so too does a defendant who pleads guilty to two counts with facial allegations

of distinct offenses concede that he has committed two separate crimes." 488 U.S. at 570, 109 S.Ct. at 762.

In response, Dvorak points out that he is not challenging the *facts* of the indictment, which he could not do under *Tolson;* nor is he seeking to reopen a proceeding through habeas corpus, as in *Broce.* We need not determine whether Dvorak waived his challenge to the upward departure. As we observed in *United States v. Robinson,* 20 F.3d 270 (7th Cir.1994), "a plea of guilty constitutes a waiver of non-jurisdictional defects occurring prior to the plea." 20 F.3d at 273. However, we further noted in *Robinson* that "[e]ven when a defendant pleads guilty unconditionally ... the court may review nonjurisdictional errors for plain error." *Id.* (citing Fed. R.Crim.P. 52(b)). Like the court in *Robinson,* "we find that no error occurred, and thus it is not necessary to consider the 'plain' or prejudicial aspects of the plain error doctrine." *Id.*

ered a "prior sentence." The parties agree that our review is proper under the clear error standard. *United States v. Hopson*, 18 F.3d 465 (7th Cir.1994). Under the "clear error" standard, we reverse only where "we are left with the definite and firm conviction that the [district] court's factual determination was mistaken." *Hopson*, 18 F.3d at 469 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

■ When considering whether a sentence previously imposed on a defendant was for conduct unrelated to the present offense and is thus a "prior sentence" for purposes of § 4A1, the court considers the following factors:

> [T]he appropriate inquiry is whether the "prior sentence" and the present offense involve conduct that is severable into two distinct offenses. This is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered.

*Hopson*, 18 F.3d at 468 (quoting *United States v. Escobar*, 992 F.2d 87, 89 (6th Cir. 1993)).

The record in this case and the facts of Dvorak's prior convictions as set forth in *Dvorak*, 41 F.3d 1215 (to which both parties refer in their briefs) lend ample support to the trial judge's conclusion that Dvorak's 1994 bribery and tax evasion sentence was separate and distinct from this case and thus can only be considered as a "prior sentence." Initially, we observe that at the time Dvorak pleaded guilty to bribery and tax evasion in 1994, he told the court that those offenses represented *all* of the criminal conduct in

which he had engaged while serving as Undersheriff. It is obvious that Dvorak was not being truthful at that time, for he later entered a plea of guilty to mail fraud in connection with the fraudulent hiring scheme. Thus, "the delay in the discovery of the offenses, a factor entirely in the control of the defendant," is the reason Dvorak was not charged and sentenced for the fraudulent hiring scheme until two years after his conviction and sentencing for bribery and tax evasion. *United States v. Holifield*, 53 F.3d 11, 16 (3d Cir.1995).[13]

We next undertake the "fact-specific" comparison of the current and former offenses called for by *Hopson*. Dvorak's former convictions arose from his acceptance of bribes in the form of the use without charge of eight automobiles from the Zaransky brothers, who were seeking to win contracts to supply vehicles to the Sheriff's Department. During the time he was using the automobiles provided by the Zaranskys, Dvorak unsuccessfully sought to gain contracts for them to supply vehicles to the Sheriff's Department. The second count of Dvorak's prior conviction was based on his accepting a bribe in the form of an $8000 gold Rolex watch from a sheriff's deputy who believed that, by giving Dvorak the watch, he was securing a position with the Sheriff's Department. Dvorak failed to pay taxes on the personal value gained from either the use of the automobiles or the gold watch. *Dvorak*, 41 F.3d at 1216. There is nothing in the record to suggest that any person in the Sheriff's Department other than Dvorak was involved in the purely private transactions between the Zaranskys and the deputy who gave Dvorak the $8000 watch.

It is obvious from the record that the fraudulent hiring scheme crime is clearly a separate and distinct criminal violation from that of Dvorak's previous bribery and tax evasion offenses. In those prior crimes,

---

**13.** Hollifield addressed a different argument than that presented by Dvorak, namely whether a district court was required to depart downward under § 5G1.3(c) when sentencing a defendant who had on one prior occasion pleaded guilty and failed at the time of that previous guilty plea to truthfully disclose all of the criminal conduct he had engaged in. Nonetheless, the court's language is instructive to this case. Had Dvorak been sentenced for the bribery and tax evasion offenses and the fraudulent hiring scheme at the same time in 1994, his criminal history category at the time of his 1994 sentencing (based on the fact that Dvorak at that time had no other convictions) would have been a I. *Cf. Greer*, 91 F.3d at 1001 (when defendant who committed two unrelated crimes was sentenced for both on same day, criminal history category should not include either sentence).

Dvorak sought to gain personal financial benefits by accepting the bribes and not paying taxes on them, and he acted on his own (i.e., not in league with Hogan). In contrast, the fraudulent hiring scheme was a plan which benefitted Dvorak politically, as opposed to financially, and it involved other members of the Sheriff's Office who assisted Dvorak in placing favored individuals on the Sheriff's Department payroll. Thus, the fraudulent hiring scheme did not involve the same "criminal plan or intent" as the bribery and tax evasion offenses. We also agree with the Government that there is no overlap between the elements of the mail fraud crime charged in connection with the fraudulent hiring scheme and the tax evasion and bribery charges.

Dvorak emphasizes that both the bribery and tax evasion offenses and the fraudulent hiring scheme, in his words, "involved the same victims (the public)." We agree with the Government's observation that, "[a]t that level of generality, virtually all offenses emanating from the Sheriff's Office could be deemed 'related' to one another," since the vast majority of public corruption crimes by a high-ranking official within the Sheriff's Department would harm "the public." Finally, Dvorak argues that, because the fraudulent hiring scheme and the bribery/tax evasion offenses both occurred during the same period of time and at the same office (the Cook County Sheriff's Office), we should view them as a single crime. However, because the offenses did not involve a similar plan, intent, or execution as pointed out above, we fail to see how *this* transforms unrelated criminal activity into a single crime. In sum, the facts set forth in the report of Dvorak's previous appeal, at 41 F.3d 1215, when compared with the record before us in the instant case, reveal that the bribery and tax evasion offenses and the fraudulent hiring scheme are two separate and distinct examples of Dvorak's corrupt activities while in office, and were thus properly treated by the sentencing judge as unrelated crimes.

Affirmed.