142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Earnest L. CLARK, Defendant-Appellant.
 No. 97-1249.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Feb. 19, 1998*
Decided March 24, 1998.
 ORDER
 McKINNEY
 
 1
 Earnest L. Clark was convicted of two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1). The court then sentenced him to 360 months' imprisonment. Clark now raises three challenges to his conviction and one to his sentence. Finding no error in the district court's handling of any of these matters, we affirm.
 
 
 2
 * Clark's history of cocaine dealing has a familiar ring to readers of this court's orders and opinions. He began selling cocaine to DeMarco Thacker in February 1992. Before long, he was regularly furnishing Thacker with quantities ranging from one-quarter kilogram to over one kilogram. In October 1994, Terrance Payne joined Thacker as another distributor of cocaine. Clark, meanwhile, continued his role as supplier. Between October and December 1994, Clark sold Thacker and Payne between two and three kilograms of cocaine, as well as small quantities of heroin.
 
 
 3
 The group's luck ran out on January 9, 1995, when Thacker and Payne tried to sell some of the cocaine they had received from Clark to undercover police officers. The two sellers were arrested, and Thacker began cooperating with the police as part of a plea bargain he made. Thacker fingered Clark as his source, which caused the federal Drug Enforcement Administration to begin investigating Clark. Working with the DEA, Detective Roderick Wallace of the Indianapolis Police Force monitored three controlled buys of cocaine between Clark and Devin Thompson, a confidential informant. Wallace also learned that Clark was providing Charles Hardister with heroin. Wallace then searched Hardister's residence pursuant to a search warrant and eventually arrested Hardister. With the help of information from Hardister, the investigators ultimately obtained a search warrant for Clark's place of business in Indianapolis.
 
 
 4
 That search took place on February 13, 1996. Just before they executed the warrant, the police saw Clark leave the building. Clark, who had also spotted them, tossed a white pill bottle on the ground, which later was found to contain a small amount of heroin and cocaine. The officers then arrested Clark, searched him, and turned up a cellular telephone, a digital pager, notes containing Thacker's telephone number, drug records, and $19,328 in cash. The search of the business premises was also fruitful. The police found about 400 grams of heroin, 125 grams of cocaine, "cutting" agents for both drugs, triple beam scales, a loaded handgun, drug records, and $33,261 in cash.
 
 
 5
 Before his trial, Clark moved to suppress all the evidence found in the February 13 searches, based on flaws in the warrant. The district court denied his motion, and the case went to trial. During the trial, Thacker admitted that he had lied under oath at Payne's trial by minimizing the amount of cocaine that the two had obtained from Clark in January 1995. He admitted that they had actually received two kilograms of cocaine, not the one he had formerly claimed. Also at trial, DEA Special Agent Thomas Casey testified for the government about the drug ledgers seized from Clark's person and business, detailing the number of transactions for both drugs and the amount of money Clark was earning. During cross-examination, Casey was asked whether he had ever interviewed or reviewed telephone records with Thacker. The government objected to the question as outside the scope of direct examination. Although the district court sustained the objection, it also invited Clark to call Casey as his own witness. Clark did not; instead, he rested without calling any witnesses and was ultimately convicted.
 
 
 6
 At sentencing, Clark disputed the district court's decision to put him in Criminal History Category V. He argued that the court improperly assessed three criminal history points for a January 1979 conviction. The court rejected his challenge, for reasons we describe below, but it also went on to announce that even if the three points had not been included, he would have departed upward to place Clark in Category V in any event and would have imposed the same sentence.
 
 II
 
 7
 1. Motion to Suppress. Relying on Franks v. Delaware, 438 U.S. 154 (1978), Clark asserts that Detective Wallace made false statements in his affidavit supporting the search warrant for his business premises, and that without those false statements the remainder of the affidavit was insufficient to establish probable cause. The district court, however, found that Clark had failed to demonstrate a key fact under Franks: namely, that without the allegedly false statement, the remainder of the affidavit was insufficient to establish probable cause. We review the district court's probable cause determination de novo, see Ornelas v. United States, 116 S.Ct. 1663 (1996), but we find nothing to criticize here. The unchallenged parts of the affidavit included information showing that Clark was the subject of an ongoing DEA investigation, that Wallace had personally witnessed two controlled purchases from Clark on the very premises for which the warrant was being sought, and that Clark had participated in numerous drug transaction. We apply a "totality of the circumstances" test to see if probable cause exists, and from that perspective the district court correctly found it here. Clark's illegal activities were linked to the premises to be search, and both were supported by sufficient information.
 
 
 8
 2. Use of Perjured Testimony. Second, Clark argues that the government knowingly used perjured testimony to secure his conviction. This claim, however, boils down to his unsupported belief that Detective Wallace, Thacker, and Thompson were somehow in collaboration with one another to put Clark away. We review a claim that the government has knowingly used perjured testimony for abuse of discretion. See United States v. Payne, 102 F.3d 289, 291-92 (1996). On this record, we see nothing approaching this. Clark's arguments about Wallace show at most that Wallace's statements at Clark's detention hearing and before the grand jury were inconsistent with testimony he gave at the trial. But mere inconsistencies do not establish the government's use of perjured testimony. See United States v. Magana, 118 F.3d 1173, 1191 (7th Cir.1997), cert. denied, 66 U.S.L.W. 3557 (U.S. Feb. 24, 1998) (No. 97-7575) Clark's claim about Thacker points out the obvious fact that Thacker admitted to lying in the past, but this certainly does not establish that the government knew he was lying at Clark's trial (or even that he was lying at Clark's trial). Last, Clark's vague claim that Thompson's testimony was "materially suspect" does not even begin to satisfy his burden of showing the government's knowing use of perjured testimony.
 
 
 9
 3. Limitation of Cross-Examination of Casey. We describe above the general substance of Agent Casey's testimony and the questions Clark wanted to put to him. It is enough here to reiterate that the district court has broad discretion in controlling the scope of a witness's examination, and that Judge McKinney did not abuse his discretion here. See United States v. Hoyos, 3 F.3d 232, 236 (7th Cir.1993). Indeed, this argument strikes us as frivolous, given the fact that Judge McKinney was willing to allow Clark to call Casey as his own witness and ask him about the telephone conversations with Thacker.
 
 
 10
 4. Criminal History Calculation. Under U.S.S.G. § 4A1.2(e)(1), the sentencing court is required to "count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." All parties agreed that in Clark's case December 1994 marked the time when Clark was considered to have committed the offense of conviction; the crucial fifteen-year period therefore began in December 1979. In 1978, Clark was convicted of violating the Indiana Controlled Substance Act and sentenced to a term of two years. The district court had before it a certified copy of his Commitment, which showed January 25, 1979, as the date of the sentence. Because the sentence was not due to be completed until January of 1981, the court concluded that it was clear that Clark must have been incarcerated under the Indiana sentence for at least part of the fifteen-year period. We regard this as a finding of fact, which we review under the clear error standard. See United States v. Dvorak, 115 F.3d 1339, 1346 (7th Cir.1997). Here, once the date of the sentence and its length were proven, Clark bore the burden of producing evidence that would have shown that he had already been released from prison prior to December 1979. See Nichols v. United States, 75 F.3d 1137, 1145 (7th Cir.1996). Because Clark offered nothing to refute the logical inference from the Commitment order, we cannot find that the district court clearly erred in its criminal history determination.
 
 
 11
 For these reasons, we AFFIRM Clark's conviction and sentence.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs an record. See Fed.R.App.P. 34(a); Cir.R. 34(f)